POUCH RUACH,                                    CIV. NO. 12-1129 (PAM/JSM)

    Plaintiff,                          REPORT AND RECOMMENDATION

v.

ASHLEE BERTS, et.al.,

    Defendants.

This matter is before the Court on Plaintiff's Motion for the Defense of Qualified Immunity [Docket No. 44]; Plaintiff's Motion for Partial Summary Judgment [Docket No. 52]; and Defendants' Cross Motion for Summary Judgment [Docket No. 78]. This matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [Docket No. 1].

## I.    BACKGROUND

Plaintiff Pouch Ruach was a state prisoner incarcerated at the Minnesota Correctional Facility, Stillwater, Minnesota ("MCF-Stillwater") at the time of the events described in his Amended Complaint. Amended Complaint, ¶63 [Docket No. 3-1]. Ruach, who is pro se, sued defendants in this 42 U.S.C. §1983 action alleging that they violated his federal constitutional rights. Id., p. 1. Defendants are the Minnesota Department of Corrections ("MNDOC") and MNDOC employees who work at MCF-Stillwater where Ruach was incarcerated until his transfer to MCF-Oak Park Heights. Id., ¶63. Ruach sued defendants in their individual and official capacities. Id., ¶¶4-12.

## A. <u>Notice of Violation #436033</u>

Ruach alleged that on March 8, 2011, he was sexually assaulted by Samuel Moore, a correctional officer ("CO") at MCF-Stillwater. <u>Id.</u>, ¶¶14-19. According to Ruach, Moore grabbed and squeezed Ruach's buttocks while taking off Ruach's waist chain and handcuffs. <u>Id.</u>, ¶¶14-17. Correctional officers Shannon Smith[1] and defendant Michael Warner observed the assault but did nothing to prevent it. <u>Id.</u>, ¶¶ 20-26. After the incident, Moore "made offers" to Ruach in exchange for Ruach's agreement not to report the incident. <u>Id.</u>, ¶31. According to defendants, Ruach refused Moore's direct order to place his hands in the cuff pass, making it difficult to remove the handcuffs. Affidavit of Samuel Moore ("Moore Aff."), ¶2 [Docket No. 86]. After Moore removed Ruach's handcuffs, Ruach adopted an aggressive stance, threw punches in the air and yelled at Moore for grabbing his hand while removing the handcuffs. <u>Id.</u> Moore stated that during the incident, Ruach yelled "I'm not a soft motherfucker, I'll break you in half." <u>Id.</u> Moore denies ever having touched Ruach's buttocks in a sexual manner. <u>Id.</u>

The next day, Ruach was placed in punitive segregation and served with a Notice of Violation ("NOV") for disobeying direct orders, threatening others and disorderly conduct. Amended Complaint, ¶¶32-33, 40, 41. Moore wrote the incident report on which the Notice of Violation was based. Moore Aff., ¶3. Ruach was given a copy of the Notice of Violation outlining the charges, but refused to sign an

---

[1]     Shannon Smith was never served with the Amended Complaint and is not a defendant. <u>See</u> Docket No. 14 (Return of Service).

acknowledgement.  Affidavit of John King ("King Aff.") [Docket No. 87], Ex. 2 (NOV #436033) [Docket No. 87-1].

Ruach alleged that he asked that certain staff and inmates be called as witnesses to testify at a disciplinary hearing on the charges, but defendants Greg Lindell and Scott Behrends, the hearing officers, refused to call the witnesses, stating that they would not call witnesses from the general prison population to a hearing involving an inmate in segregation and that the staff reports "gave a full picture of the incident." Amended Complaint, ¶38.

The hearing was originally scheduled for March 15, 2011, but it was continued at Ruach's request so that he could obtain representation and prepare his defense.  King Aff., ¶5.  The hearing was continued to April 5, 2011, in part because Moore was on vacation.  Id.  Defendant Scott Behrends was the hearing officer and defendant Greg Lindell was the prosecutor.  Affidavit of Scott Behrends ("Behrends Aff."), ¶2 [Docket No. 83]; Affidavit of Greg Lindell ("Lindell Aff."), ¶3 [Docket No. 82].  Behrends and Lindell stated that they did not receive a request from Ruach to call any particular witnesses.  Behrends Aff., ¶3; Lindell Aff., ¶4.  Ruach appeared at the hearing as did Moore. Behrends Aff., ¶3.  Moore testified consistent with his report.  Id.  Ruach did not ask Moore any questions about the incident.  Id.  Ruach moved for dismissal based on the postponement of the hearing, but Behrends denied the motion, concluding that Ruach had not suffered any loss of liberty as a result of the continuance because he was on detention status for an earlier offense.  Id.  Ruach's only defense was that he did not do what Moore said he had done.  Id.  Ruach was found guilty of the charges,

placed in segregation for 210 days and given sixty days of extended incarceration. King Aff., Ex. 2.

Ruach appealed Behrends' findings and the appeal was handled by defendant Warden John King. King Aff., ¶3. King found no due process violations in connection with the hearing and found that the only procedural issue raised by Ruach's appeal was the postponement from March 29, 2011 to April 5, 2011. Id. However, Ruach did not explain how he was prejudiced by the postponement. Id. ¶5. King reviewed the incident report, NOV, notice of postponement and Behrends' findings, and concluded that there was sufficient evidence to support Behrends' findings and that Ruach was given proper notice of the postponement. Id. As a result, King denied the appeal. Id.; King Aff., Ex. 2 (Moore's incident report; NOV #436033, Request for Continuance, Notice of Postponement, Hearing Findings, Appeal, kite[2] dated April 11, 2011 (seeking dismissal because of postponement), King's denial of appeal).

## B. Notice of Violation #436405

On March 13, 2011, defendant Lieutenant Jenny Carufel received a kite from Ruach regarding the March 8, 2011, interaction with Moore. Affidavit of Jenny Carufel ("Carufel Aff."), ¶2, Ex. 1 (copy of kite) [Docket No. 81]. Ruach alleged that Moore had touched him inappropriately while taking off his handcuffs. Id. Carufel reviewed the video of the incident and concluded that the video did not show any misconduct by

_____

[2] A "kite" is "a printed form issued by the Minnesota Department of Corrections that offenders use to communicate with staff (e.g., ask questions, communicate concerns, request a special visit, request for program information, request for information to transfer, etc.). A kite form can be used to request appointments, information, programming, or to informally resolve an issue." MDOC Policy 303.100, effective 8/3/10,http://www.doc.state.mn.us/DocPolicy2/html/DPW_Display_TOC.asp?Opt=303.1 00.htm

Moore.  Carufel Aff., ¶2, Ex. 2 (video of incident).  Carufel wrote a memo to Ruach informing him of her findings.  Id., Ex. 3 (Memorandum dated March 13, 2011 from Carufel to Ruach).  As a result of what Carufel considered to be Ruach's false accusations against Moore, Carufel wrote an incident report accusing Ruach of lying, misrepresentation and disorderly conduct.  Carufel Aff., ¶2; Amended Complaint, ¶42; Affidavit of Michael Warner ("Warner Aff."), ¶4 [Docket No. 90].  Also on March 13, 2011, Associate Warden of Administration Michelle Smith received a kite from Ruach regarding Moore's alleged sexual contact.  Affidavit of Michelle Smith ("Smith Aff."), ¶3 [Docket No. 84].  Smith directed defendant Bruce Julson, the Corrections Program Director at MCF-Stillwater, to investigate and respond to Ruach's kite.  Id.  Julson responded to the kite, explaining to Ruach that the allegations had been investigated and found to be unsubstantiated.  Affidavit of Bruce Julson ("Julson Aff."), ¶3 [Docket No. 92]; Julson Aff., Ex. 2 (copy of kite).

The disciplinary hearing on Carufel's charges took place on March 22, 2011, before defendant Craig Oseland, disciplinary prosecutor, and defendant Scott Hadrava, the hearing officer.  Amended Complaint, ¶43, Affidavit of Scott Hadrava ("Hadrava Aff."), ¶3 [Docket No. 99]; Affidavit of Craig Oseland ("Oseland Aff."), ¶2 [Docket No. 88].  Ruach refused to attend the disciplinary hearing.  Oseland Aff., ¶3; Hadrava Aff., ¶3; King Aff., Ex. 3.  Neither Oseland nor Hadrava received a request from Ruach to call witnesses.  Oseland Aff., ¶3; Hadrava Aff., ¶3; King Aff., Ex. 3.  In light of the evidence and the lack of defense, Hadrava found Ruach guilty of lying and misrepresentation and disorderly conduct.  Id.  Accordingly, he was given 30 days of punitive segregation and five days of extended incarceration.  Id.; Amended Complaint, ¶46.  Ruach appealed

the decision and King denied the appeal.  King Aff., ¶¶3-6.  King did not find any due process violations or any reason to overturn the hearing officers' decision.  Id., ¶4.

On March 20, 2011, two days before the disciplinary hearing on NOV #436405, Carufel received a kite from Ruach.  Carufel Aff., ¶2.  Ruach alleged that when he asked Moore to staple some papers for him Moore said "Fuck you and keep your mouth shut."  Id., ¶3.  Ruach claimed he contacted the staff by intercom and told them about the incident and asked to speak to the sergeant.  Id., ¶3.  Carufel reviewed the video and listened to the intercom communications for the time and date Ruach alleged this incident occurred and found his allegations were false.  Id.  On March 22, 2011, Carufel responded to Ruach's kite and informed him of the findings of her investigation.  Id., Exs. 3,4 (kite and Carufel's response).

On April 13, 2011, Ruach's case manager, defendant Ashlee Berts, received a kite from Ruach, alleging that the staff had charged him with discipline violations as retaliation against him for his accusations against Moore.  Affidavit of Ashlee Berts ("Berts Aff."), ¶2, Ex. 1 (kite).  Ruach accused the staff of lying about him and asked to be moved to "quiet status" in a cell that had a camera.  Berts Aff., Ex. 1; Complaint, ¶61. According to Berts, "as a caseworker, I did not have the authority to transfer an inmate to a different cell or initiate an investigation into staff conduct."  Id., ¶3.  Berts forwarded the kite to defendant Julson.  Id.  Julson concluded, based on Carufel's investigation (reviewing the tape of Moore's alleged sexual contact with Ruach), that Ruach's claims were unsubstantiated and there was no basis for moving Ruach to a cell with a camera. Julson Aff., ¶¶5, 6.

**C.    Notice of Violation #437341**

6

On April 8, 2011, Moore was collecting food trays in the segregation unit when he heard Ruach make a comment he could not hear completely. Moore Aff., ¶5. Moore asked Ruach what he said and Ruach replied "Your momma's a bitch, straight up." Id. Moore wrote an incident report charging Ruach with abuse/harassment and disorderly conduct. Id.; Hammer Aff., Ex. 1 (NOV #437341; Moore's incident report; hearing findings). On April 11, 2011, Ruach was charged with abuse, harassment and disorderly conduct and an NOV was issued. Amended Complaint, ¶54; Affidavit of Steve Hammer, Ex. 1 [Docket No. 85-1] (NOV # 437341). Defendant Greg Lindell was the hearing office for this "minor" disciplinary hearing. Lindell Aff., ¶3. A hearing is "minor" when extended incarceration cannot be imposed as a consequence. King Aff., Ex. 1.

Ruach attended the hearing and denied making the statement to Moore, but Lindell found by a preponderance of evidence that Ruach was guilty of the alleged rule violation and issued a written report of his findings. Id., Hammer Aff., Ex. 1 (hearing findings report). Ruach lost his privileges for fifteen days. Id. Ruach appealed the findings and MCF-Stillwater Associate Warden Steve Hammer denied the appeal. Hammer Aff., ¶¶2-3. Ruach's basis of appeal was that he did not make the statement Moore accused him of making. Hammer Aff., ¶3.

### D. Notice of Violation #437570

On April 13, 2011, Ruach received another NOV charging him with abuse, harassment, threatening others and disorderly conduct. Amended Complaint, ¶¶56-58. This NOV followed an incident in which Moore was distributing kites in the segregation unit and Moore heard Ruach yell "Don't throw kites in my cell! You should man up. You

should see me in the streets, you don't even know." Moore Aff., ¶6. Moore took this statement as a threat and wrote an incident report. Id.; Affidavit of Paula Thielen ("Thielen Aff."), Ex. 1 (Moore's incident report) [Docket No. 91]. Moore's report indicated that "[i]t should be noted that this continues [Ruach's] trend of verbal harassment and threats to this reporting officer." Thielen Aff., Ex. 1.

A few hours later, CO Brianna Arnzen was randomly monitoring the intercoms in the segregation unit. Affidavit of Briannna Arnzen ("Arnzen Aff."), ¶¶1, 3 [Docket No. 83]. As Moore was walking past Ruach's cell, Arnzen heard him say "bitch Ass C.O., I'm 'a kill yo motherfuckin' ass." Id., ¶3. Arnzen wrote an incident report. Arnzen Aff., Ex. 1 (incident report). Arnzen noted that "[o]ver the last couple of weeks, Ruach has made numerous threatening statements to and regarding Officer Moore." Id.

Correctional officer Warner reviewed Moore's and Arnzen's incident reports and determined there was sufficient evidence to charge Ruach with abuse/harassment, three counts of threatening others and disorderly conduct. Warner Aff., ¶6; Arnzen Aff., Ex. 1. Ruach received a NOV detailing these charges. Arnzen Aff., Ex. 1; Amended Complaint, ¶56.

At the disciplinary hearing, Lindell was the prosecutor and defendant Paula Thielen was the hearing officer. Lindell Aff., ¶3; Thielen Aff., ¶2. Ruach did not ask Thielen or Lindell to call any witnesses on Ruach's behalf. Lindell Aff., ¶4; Thielen Aff., ¶3. Thielen found Ruach guilty of the charges and imposed 315 days in segregation and 60 days of extended incarceration. Amended Complaint, ¶57; Thielen Aff., ¶3, Ex. 1. Thielen noted in her hearing findings that "the offender has an extensive discipline

record for abuse, threatening behavior and assaultive behavior" and imposed the penalties "given his continued volatile behavior." Thielen Aff., Ex. 1.

According to Lindell, Ruach did not file an appeal regarding Thielen's decision. Lindell Aff., ¶7. Ruach alleged that he did appeal this decision and that he put his appeal (or request for appeal) "on the record," but MCF-Stillwater staff told him they did not receive an appeal. Amended Complaint, ¶58. Ruach also contended that his request for video of the incidents during his hearing was denied. Id. The hearing findings do not reflect Ruach's request for the video.

In addition to these disciplinary events, Ruach alleged that he sent a kite to Berts requesting to make a legal call and that request was denied (Amended Complaint, ¶51); on March 13, 2011, Ruach submitted a grievance to defendant Margaret Thron, the grievance coordinator for MCF-Stillwater, which was rejected (Amended Complaint, ¶52)[3]; and on April 6, 2011, Ruach requested that a disciplinary matter be sent to the Central Office, which was denied by Lindell. Id., ¶53.

Ruach claimed he was was placed in "kite management"[4] on April 21, 2011, without explanation. Amended Complaint, ¶62. On April 29, 2011, Ruach was transferred to MCF-Oak Park Heights. Id., ¶63.

### E.    Claims for Relief

---

[3]    There is no other information in the Amended Complaint about this grievance.

[4]    Defendants submitted the Second Affidavit of Bruce Julson [Docket No. 128], in which Julson explained that "[a]n offender is placed on kite management when he continuously sends multiple kites to multiple staff regarding the same issue even though he has received an appropriate response to the issue or concern. Id., ¶2. "Based on the numerous kites that were submitted to staff by Ruach regarding his complaint of sexual conduct . . . I directed Ruach's case manager, Ashlee Berts, to place Ruach on kite management on April 21, 2011." Id., ¶3.

Ruach alleged that Moore's actions and the actions of the DOC defendants who failed to intervene to prevent his assault constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Id., ¶64. Ruach further alleged that Moore's actions amounted to the tort of assault and sexual misconduct. Id., ¶65. [5]

Ruach alleged that defendants King, Hammer, Julson and Smith's failure to take any disciplinary action against Moore and Warner "constituted deliberate indifference, and contributed to and proximately caused the above described violation of Eighth Amendment rights and assault and misconduct." Id., ¶66.

Ruach alleged that the failure of hearing officers Lindell, Thielen, Behrends, Hadrava, and Oseland to call the witnesses he requested at his disciplinary hearings and finding him guilty of all charges without evidence and inadequate explanations of the disposition of the charges, constituted a denial of his due process rights in violation of the Fourteenth Amendment of the United States Constitution. Id., ¶67.

Ruach alleged that defendants Julson, Berts, and Carufel's failure to move him to a cell with a camera, to "follow up" on his allegation of retaliation, and in denying him protection from abuse constituted deliberate indifference to "plaintiff's serious of [sic] protection care needs" in violation of the Eighth Amendment. Id., ¶68.

---

[5] The Amended Complaint stated: "The actions of defendant Moore in using physical force, physical abuse and misconduct against the plaintiff without need or provocation constituted the tort of assault and sexually [sic] misconduct under the law of _____. Amended Complaint, ¶66. The Court assumes that Ruach intended to fill in the word "Minnesota."

Ruach claimed that King and Hammer's refusal to "overturn" Ruach's disciplinary conviction, despite knowing of the alleged due process violations, violated his due process rights under the Fourteenth Amendment.  Id., ¶69.

## F.    Relief Requested

As relief, Ruach sought a declaratory judgment that: (1) the physical abuse by Moore, Arnzen, Shannon Smith and Warner, and failure by King, Hammer, Julson and Smith to take actions to curb physical and sexual violence to prisoners violated Ruach's federal constitutional rights under the Eighth Amendment and constituted sexual assault and sexual misconduct under state law (id., Request for Relief, ¶¶A(1)-(2)); (2) the actions by Lindell, Thielen, Hadrava and Oseland in conducting the disciplinary hearings and by King and Hammer in sustaining their decisions violated Ruach's due process rights under the Fourteenth Amendment (id., ¶A(3)); (3) the failure of Julson, King, Hammer and Carufel to provide an adequate investigation, protect Ruach from retaliation and provide "protection care" violated and continues to violate his rights under the Eighth Amendment. Id., ¶A(4).

In addition, Ruach sought an injunction (1) ordering defendants King, Julson, Hammer, Smith, "or other agents" to immediately remove him from segregation and arrange for a mental health examination and mental health therapy, ordering defendants "carry out without delay" treatment directed by the mental health practitioner (id., ¶¶B(1)-(3)); and (2) requiring Warden King to release him from segregation into the general prison population, reinstate all of his privileges, and expunge his disciplinary record. Id., ¶¶C(1)-(3).

Ruach also sought punitive and compensatory damages against all defendants in varying amounts. Id., ¶¶D(1)-(3), E(1)-(3); "alternative version of damage demand," ¶¶D(1)-(3), E(1)-(3).

### G. Defendants' Answer

Defendants Berts, Julson, Smith, Carufel, Lindell, Behrends, Thron, Warner, Hadrava, Oseland, Lind, Hammer, Theilen, Arnzena and Moore answered, generally admitting Ruach's disciplinary history, but otherwise denying his allegations. Answer to Amended Complaint [Docket No. 18]. Defendants asserted various defenses, including qualified, official or discretionary immunity and Eleventh Amendment immunity. Id., ¶¶4, 5. Defendants Perry and the MNDOC answered separately, asserting the defenses of Eleventh Amendment immunity, official immunity and failure to exhaust administrative remedies. Answer of Minnesota Department of Corrections and Perry [Docket No. 22].

### H. Ruach's Motion for Defense of Qualified Immunity [Docket No. 44]

A few months after defendants answered Ruach's Amended Complaint, Ruach filed a motion entitled "Motion for the Defense of Qualified Immunity Issues Raised by the Defendants." [Docket No. 44]. Ruach argued that the Court should deem defendants' defense of qualified immunity waived because "defendants failed to raise it in [the Court's] pretrial order." Affidavit of Pouch Ruach in Support of Plaintiff's Moiton for the Defense of Qualified Immunity, p. 2 [Docket No. 44].[6] In his supporting memorandum of law, Ruach reviewed the general standards governing qualified immunity and again asserted that because qualified immunity was not discussed in this Court's Pretrial Scheduling Order, the Court should deem the defense waived.

---

[6] This Court ordered defendants to respond to Ruach's Motion for Defense of Qualified Immunity in their response to Ruach's Motion for Partial Summary Judgment. Order, Dec. 19, 2012 [Docket No. 59], Order, January 11, 2013 [Docket No. 70]. Defendants thoroughly briefed the issue of qualified immunity in their response [Docket No. 79] and Reply [Docket No. 127]. Defendants did not specifically address the issue of waiver and responded to Ruach's Motion for Partial Summary Judgment and Motion for Defense of Qualified Immunity.

Memorandum of Law in Support of Plaintiff's Motion for the Defense of Qualified Immunity Issues Raised by Defendants, pp. 2-7 [Docket No. 45].

## I.  Ruach's Motion for Partial Summary Judgment [Docket No. 52]

Ruach moved for partial summary judgment on his procedural due process claims.  Plaintiff's Brief in Support of Partial Summary Judgment ("Pl. Brief"), pp. 3-10 [Docket No. 53].  This motion reiterated Ruach's contention that he was denied due process through defendants' failure to provide a meaningful explanation of why he was found guilty of the various disciplinary charges, failure to call witnesses, postponement of one disciplinary hearing without explanation, and King and Hammer's failure to correct the due process violations at the appeal stage.  Id., pp. 8-10.  In support of his motion, Ruach submitted a copy of the MCF-Oak Park Heights Offender Discipline Regulations  [Docket No. 54].  In addition, Ruach filed a document entitled "Undispute[d] Facts."  [Docket No. 55].  Ruach asserted that he asked Lindell to call witnesses to his disciplinary hearing[7] (although he did not submit any evidence to support that contention), and "no evidence" was submitted in support of the charges against him. Id., pp. 2-3.  Further, the written dispositions prepared by Lindell and the hearing officers stated only "guilty as charged based on staff reports with no further explanation."  Id., p. 3.  Ruach contended that he pointed out the deficiencies in the hearing officers' findings to King and Hammer, but they affirmed the hearing officers' decisions anyway.  Id., p. 4.  As a result, Ruach lost privileges for 45 days, was placed

---

[7]     Ruach did not specify which disciplinary hearing he was referencing, but the Court believes it was the hearing on NOV #436033, in which Ruach was charged with disobeying a direct order, two counts of threatening others, and disorderly conduct. King Aff., Ex. 2.

in punitive segregation for 600 days and was subject to 190 days of extended incarceration.  Id.

### J.    Defendants' Cross-Motion for Summary Judgment [Docket No. 78]

Defendants moved to dismiss the claims against defendants Thron and Perry under Fed. R. Civ. P. 12(c) on the grounds that Ruach had not pled any facts to support any claim for relief against these two defendants.  Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem."), p. 12 [Docket No. 79].

Defendants argued that Ruach's §1983 claims against the defendants in their official capacities are barred by the Eleventh Amendment (Id., pp. 13-16) and the defendants are shielded from suit in their individual capacities by qualified immunity. Id., pp. 26-27.   Defendants further asserted that Ruach failed to exhaust his administrative remedies regarding NOV #437570 and his due process claim regarding his inability to call witnesses at any disciplinary hearing.  Id., pp. 16-18.

As to the merits of Ruach's claims, defendants submitted:

(1) they were entitled to summary judgment on Ruach's Eighth Amendment claims because the undisputed evidence was that Moore did not touch Ruach in a sexual manner; and there is no evidence that Warner and Arnzen were aware of the alleged conduct and could not, therefore, have prevented it.  Id., p. 19.

(2) Ruach's claim that King, Hammer, Julson and Smith's failure to take disciplinary action against Moore and Warner to curb known patterns of physical abuse of inmates in violation of the Eighth Amendment failed because Ruach failed to present any competent evidence that Moore or Warner had a pattern of physically abusing prisoners.  Id., p. 20.  Apart from Ruach's allegation against Moore, King, Hammer, Julson and Smith were not aware of any claims of sexual or physical abuse against Moore or Warner.  Id. (citing King Aff., ¶8; Hammer Aff., ¶6; Julson Aff., ¶20; Smith Aff., ¶2).

(3) There was absolutely no evidence that they engaged in retaliatory discipline or failed to protect Ruach from retaliatory

discipline.  Id., pp. 20-21.  According to defendants, any discipline Ruach received was the result of his own misconduct, not retaliation by the staff.  Id., p. 21.

(4) As to Ruach's Fourteenth Amendment claims, the evidence overwhelmingly established that Ruach's procedural due process rights were satisfied.  Id., pp. 23-25.

(5) As to Ruach's claim that King and Hammer violated his due process rights by failing to correct the alleged due process violations that occurred in the disciplinary hearings (Complaint, ¶69), Ruach never raised any issues regarding his inability to call witnesses or the inadequacy of the hearing officers' findings in his appeals to King and Hammer.  Id., p. 25.

(6), Ruach's common law tort claims could not survive summary judgment because the uncontroverted evidence was that Moore did not touch Ruach in a sexual manner and Moore was protected from liability by the Minnesota State Tort Claims Act, which provides that state employees are not liable for losses caused by an act or omission when exercising due care in the performance of a discretionary duty.  Id. (citing Minn. Stat. §3.736, subd. 3).

**K.**     **Ruach's Response to Defendants' Motion for Summary Judgment and Defendants' Reply**

Ruach opposed the defendants' Motion for Summary Judgment on the following grounds.  Ruach contended that the facts as alleged by him showed that the defendants were acting "maliciously and sadistically to cause harm" in violation of the Eighth Amendment.   Plaintiff Pouch Ruach's Memorandum of Law in Opposition to Defendant's Cross-Motion for Summary Judgment[,] Plaintiff's Reply for Partial Summary Judgment, and Reply for Defendant's Defense of Qualified Immunity ("Pl. Mem. in Opp."), pp. 5-6[8] [Docket No. 120].  Ruach argued that the defendants are not entitled to qualified immunity for their actions; the kite management imposed on him

---

[8]     Ruach did not number the pages of his submission.  The Court is referencing the page numbers assigned through the CM/ECF system.

was retaliatory and that prison officials destroyed Ruach's evidence that Moore had engaged in inappropriate sexual contact with him;[9] and defendants are not entitled to summary judgment on his Eighth Amendment claims because he was placed in segregation without having done anything wrong. Id., pp. 6-13. In addition, defendants were not entitled to summary judgment on his Eighth Amendment claims as they related to his claims of retaliation, failure to investigate and to protect him from harassment because Julson, King, Hammer and Thron were "all aware" of Ruach's allegations, but disregarded them. Id., p. 14. As to his failure to exhaust his remedies regarding NOV #437570, Ruach admitted that he did not appeal the hearing officer's decision, but at the same time stated that he believed that prison officials received his appeal form. Id., p. 12.

Ruach contended that the MNDOC violated his Fourteenth Amendment due process rights by confining him to segregation and extended incarceration when "no evidence" supported the hearing officer's findings and he was denied the opportunity to call witnesses and obtain the video of the incident. Id., p. 17. Further, Ruach submitted that defendants violated his right to procedural due process by infringing on his protected liberty interest in his supervised release date by imposing extended incarceration without sufficient evidence. Id., p. 20.

Ruach filed an affidavit in connection with his opposition to defendants' motion for summary judgment and in support of his motion for partial summary judgment. Affidavit of Pouch Ruach ("Ruach Aff.") [Docket No. 121]. Ruach restated the essential

---

[9] This is the Court's interpretation of the following sentences: "[Defendants] placed Ruach in kites management. Kites management means=any kites Ruach sent them they will reviewed [sic] and destroyed that is what kites management means. In a good word is destroying Ruach's sexually conduct evidences." Pl. Mem. in Opp., p. 22.

allegations regarding Moore's conduct toward him.  Id., ¶¶5-9.  In addition, Ruach stated

that contrary to defendants' assertions, he did not refuse to attend one of his disciplinary

hearings—he asserted that the corrections officer went to the wrong cell to call him for

the hearing.  Id., ¶22.  Accompanying his affidavit, Ruach sumitted copies of the kites

he directed to prison officials as well as the NOVs [Docket No. 124].  These materials

include a statement that Ruach appeared to have written in connection with a kite he

wrote after the alleged incident with Moore.  [Docket 124-2, p. 2].  There, Ruach stated

that Moore came back to his cell between 8:00 and 9:00 p.m. and told Ruach that if he

did not report the incident Moore would not charge him.  Id.  Ruach asked Moore for a

grievance form, and Moore allegedly responded "never."  Id.  The remaining exhibits

include the many kites Ruach sent to prison officials regarding his complaints about the

alleged incident with Moore and his various disciplinary hearings.

L.    **Ruach's Removal**

On April 16, 2013, the MNDOC placed Ruach on intensive supervised release.

Affidavit of Scott Grosskreutz ("Grosskruetz Aff.")  ¶¶4,5 [Docket No. 137].  However,

the United States Department of Homeland Security, Immigration and Customs

Enforcement ("ICE") had placed a detainer on Ruach, who is a citizen of Sudan, and

Ruach was released to ICE pursuant to the detainer.  Id., ¶4.  On April 24, 2013, Ruach

informed the Court that he was being housed at the Sherburne County Jail, although he

did not state that he was being held as an ICE detainee. [10]  Notice of Change of Address

---

[10]    The Court notes that it has been assigned another lawsuit filed by Ruach against
Sherburne County, Minnesota jail officers.  Ruach v. Shaffer et.al., Civ. No. 13-1260
(PAM/JSM).  In that lawsuit, Ruach alleges that defendants used excessive force,
sexually assaulted him, denied him protection in violation of the Eighth Amendment and
confined him to punitive segregation in violation of the Fourteenth Amendment.

[Docket No. 131]. On May 2, 2013, an immigration judge ordered Ruach removed and Ruach did not appeal this decision. Grosskreutz Aff., ¶5 [Docket No. 137].[11] .

On July 1, 2013, Ruach notified the Court that he was being held at the Carver County jail. Notice of Change of Address [Docket No. 139]. Ruach did not mention his pending deportation. On July 10, 2013, Ruach was removed from the United States and returned to Sudan. Second Affidavit of Scott Grosskreutz, ¶3 [Docket No. 140].

On July 8, 2013, this Court received an affidavit from Ruach, which he claimed to have filed, but which did not appear on the CM/EFC docket.[12] In his affidavit, Ruach indicated that it was not clear if he would proceed with the instant lawsuit. Ruach also sought the Court's intervention to prevent his removal. On July 10, 2013, the day Ruach was being handed over to Sudanese officials, the Court received another letter indicating that he was no longer proceeding pro se and that he had retained lawyer, Dave Goodrich of the Timothy Fitzgerald Law Firm in Chicago.[13] If this was a prisoner habeas corpus petition, the Court would have no difficulty concluding that the matter was moot as a result of Ruach's removal and, therefore, would recommend dismissal.

---

Complaint, p. 1 [Docket No. 1]. In addition, Ruach has sued in tort for sexual assault and intentional negligence. Id., p. 2.

[11]     At some point in June, 2013, Ruach was apparently being held in the Freeborn County, Minnesota jail awaiting removal. While there, Ruach was charged with assaulting two jailers. http://www.austindailyherald.com/2013/06/10/inmate-charged-with-assaulting-freeborn-jailers/

[12]     Because the Court is referencing Ruach's affidavit [Docket No. 143] and correspondence [Docket No. 142] it has filed the documents on Ruach's behalf.

[13]     As of the date of this Report and Recommendation neither Goodrich nor any other lawyer has entered an appearance on Ruach's behalf. Until a lawyer enters an appearance, the Court will treat Ruach as unrepresented.

<u>Mhanna v. United States Dept. of Homeland Sec. Citizenship & Immigration Servs.</u>, Civ. No. 10-292 (JRT/LIB), 2010 WL 5141803 at *12 (Dec. 13, 2010) (to the extent that a habeas petition is challenging detention associated with a removal order, the petition is moot once the petitioner is removed) (citing <u>Louismar v. Holder</u>, No. CA 09–0221, 2009 WL 2424445, at *2 (S.D. Ala. Aug. 6, 2009) ("Several district courts, in addition to this Court, have determined that once a § 2241 petitioner has been removed from the United States and deported to his native country his petition seeking release from detention and ICE custody becomes moot as there is no longer a live case or controversy as required under Art. 3, § 2, cl. 1." (internal quotation marks omitted)). However, as this is a §1983 action and it appeared based on Ruach's affidavit and letter that he is still pursuing this action, the Court proceeds to decide the merits of parties' motions.  <u>See</u> <u>Amando Perez-Avalos v. Deborah Schult</u>, Civ. No. 9:09-211, 2010 WL 4806988 at *1 (N.D.N.Y. Oct. 14, 2010) (deciding the merits of defendants' motion to dismiss former prisoner's §1983 action after prisoner had been deported).

## II.    LEGAL STANDARDS

### A.    <u>Pro Se Pleadings</u>

Ruach is unrepresented.  As a result, this Court applied the traditionally liberal construction afforded to <u>pro se</u> pleadings.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Federal Express Corp. v. Holowecki</u>, 552 U.S. 389, 402 (2008) (<u>pro se</u> litigants are held to a lesser pleading standard than represented parties.)  Consequently, this Court has considered Ruach's pleadings with the "appropriate benevolence" to be afforded such pleadings.  <u>See</u> <u>Thompson v. Missouri Bd. Of Parole</u>, 929 F.2d 396, 399 n. 2 (8th Cir. 1991).

## B.    **Summary Judgment**

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986);  see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).  "[I]f the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted."  DePugh, 880 F.Supp. at 656 (quoting Anderson, 477 U.S. at 248).

The moving party bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).  "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted).

When considering a motion for summary judgment, the Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the non-moving party.  Enterprise Bank v. Manga Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).

### C.      Rule 12(c) Motion to Dismiss

A party may move for judgment on the pleadings at any point after the close of pleadings but early enough to avoid delaying trial.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss.  Ashley County v. Pfizer, 552 F.3d 659, 665 (8th Cir.2009); Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir.1990).  In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Ashley County, Ark, 552 F.3d at 665.  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The pleading standard articulated by Rule 8 "does not require detailed factual allegations,

but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 662 (internal quotation marks and citations omitted).

## III.    DISCUSSION

### A.    Claims Against Thron and Perry

The Amended Complaint is void of any support for any claims against Thron and Perry.  Ruach asserted that Thron and Perry should continue as defendants because "the claims Plaintiff seeks to add will not be differen[t] to other defendants."  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem. in Opp."), p. 24 [Docket No. 120].   The Court is not certain what Ruach is referencing when he talks about claims he intends to add against Thron and Perry.  The deadline for seeking leave to amend the Amended Complaint has passed.  The Court has reviewed the Amended Complaint and finds that there are no allegations of wrongdoing by Thron or Perry and, as a result, Ruach's claims against them should be dismissed with prejudice.

### B.    Ruach's Motion for Defense of Qualifed Immunity [Docket No. 44 is Denied.

Ruach cited Maul v. Constan, 928 F.2d 784 (7th Cir. 1991) in support of his argument that the defendants waived their defense of qualified immunity.  Maul does not stand for the proposition for which Ruach cited it, and Ruach's argument is meritless.  In Maul, the defendant, a psychiatrist at an Indiana correctional facility, did not raise the defense of qualified immunity until a post-trial motion filed after entry of judgment against him.   Id. at 785.   The district court denied the motion, finding defendant had waived the defense of qualified immunity.  Id.   The Seventh Circuit affirmed the district court on this point, noting that "there was no reason that defendants

could not have raised their qualified immunity defense earlier in the proceedings" and further noting that Fed. R. Civ. P. 8(c) requires that affirmative defenses be raised in an answer to a complaint. <u>Id.</u> The Seventh Circuit referenced the fact that the defense was not raised in the pretrial order as one of many factors indicating that the defense had been waived, including defendants' failure to raise the defense at the pretrial conference, in any pretrial motions, or at trial. <u>Id.</u> Here, no pretrial conference has been held in light of the pending dispositive motions. The defendants raised the defense of qualified immunity in their answers. Answer of Berts <u>et.al.</u>, p. 8 [Docket No. 18]; Answer of Minnesota Department of Corrections and Perry, p. 8 [Docket No. 22]. The defense has not been waived. Ruach's motion should be denied and the Court will consider defendants' defense of qualified immunity on the merits.

**C.** **The Eleventh Amendment Bars Claim for Damages Against Defendants in Their Official Capacities**

The Eleventh Amendment states that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." Under the Eleventh Amendment, federal courts lack subject matter jurisdiction over a claim against a state for damages when that state has not consented to the suit. <u>See</u> <u>Kimmel v. Florida Bd. of Regents</u>, 528 U.S. 62, 72 (2000); <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 64– 65 (1996). When a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction. <u>Seminole Tribe</u>, 517 U.S. at 64–65. To the extent that Ruach has sued the defendants in their official capacities, the United States is the real party in interest and his claims are barred by the Eleventh Amendment. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Generally, in the

absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This bar also applies when officials are sued in their official capacity, because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." Brandon v. Holt, 469 U.S. 464, 471 (1985). Eleventh Amendment immunity also extends to state officials, since "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and] is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). See also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (Eleventh Amendment immunity extends to state officials when the "state is the real, substantial party in interest.") (internal quotation omitted); Treleven v. University of Minn., 73 F.3d 816, 818 (8th Cir. 1996) (official capacity lawsuits are "essentially 'for the recovery of money from the state.'") (quoting Ford Motor Co. v. Department of the Treasury, 323 U.S. 459, 464 (1945)). Further, neither a State nor its officials acting in their official capacities are "persons" under § 1983. See Will, 491 U.S. at 71 (citation omitted).

Minnesota has not waived its immunity from §1983 claims. Phillips v. Minnesota State Univ., Civ. No. 09-1659 (DSD/FLN), 2009 WL 5103233 *2 (D. Minn. 2009). It is also undisputed that the State of Minnesota has not consented to suit. See DeGidio v. Perpich, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (recognizing that the State of Minnesota's limited waiver of sovereign immunity from tort actions in state court is not a waiver of Eleventh Amendment immunity from suit in federal court for federal

constitutional claims).  In addition, it is well-established that Congress did not abrogate the states' immunity by enacting 42 U.S.C. §1983.  See Quern v. Jordan, 440 U.S. 332, 344 (1979).  "This constitutional bar applies with equal force to pendent state law claims."  Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000).

For all of these reasons, defendants are entitled to summary judgment on Ruach's claims against defendants acting in their official capacities to the extent that he is seeking money damages from them.

### D.  Ruach is Not Entitled to Declaratory or Injunctive Relief

Ruach sought declaratory relief in the form of an order that defendants' actions violated his constitutional rights, (Amended Complaint, Relief Requested ¶A(1-4)), and injunctive relief in the form of an Order requiring defendants to release him from punitive segregation; have him examined by a physician, arrange for mental health evaluation and therapy, and carry out the mental health therapy recommended; place him in the general prison population and restore all of his rights and privileges; and expunge the disciplinary convictions from his record.  Id. ¶B(1-3).

The Eleventh Amendment does not bar suits against state officials acting in their official capacities for prospective injunctive relief "to prevent future violations of federal law."  Treleven, 73 F.3d at 819 (citing Fond du Lac Band of Chippewa Indians v. Carlson, 68 F.3d 253, 255 (8th Cir.1995)).  Further, "state officials are 'persons' under § 1983 when sued for injunctive relief because such actions are not treated as actions against the State."  Id. (internal citations and quotation marks omitted) (emphasis added).

Injunctive relief is not available because Ruach is no longer in the custody of the State of Minnesota.  Grosskreutz Aff., ¶5.  "'A claim is properly dismissed as moot if it has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'"  <u>Roubideaux v. North Dak. Dep't of Corr. & Rehab.</u>, 570 F.3d 966, 976 (8th Cir. 2009) (quoting <u>Keevan v. Smith</u>, 100 F.3d 644, 647(8th Cir. 1996)); <u>see also</u> <u>Church of Scientology v. United States</u>, 506 U.S. 9, 12 (1992) (a federal court has no authority to render opinions on moot questions.  If the issues raised in a request for injunctive relief are no longer "live" or the parties no longer have a cognizable interest in the outcome of the litigation—for example, prisoners who are no longer in custody and there is no suggestion that they will be returned to custody—then the claims must be treated as moot.  <u>Id.</u> at 976; <u>see also</u> <u>Smith</u>, 190 F.3d at 855.

Similarly, an inmate's claim for declaratory relief becomes moot when he is no longer subject to the conditions that gave rise to his claim.  <u>See</u> <u>Senty-Haugen v. Goodno</u>, 462 F.3d 876, 889 (8th Cir. 2006) (rejecting offender's claim for declaratory relief regarding his placement in isolation as moot after offender was removed from isolation); <u>Smith v. Hundley</u>, 190 F.3d 852, 855 (8th Cir. 1999) (dismissing as moot a prisoner's First Amendment claim for declaratory relief when he was transferred to a different prison); <u>Hickman v. Missouri</u>, 144 F.3d 1141, 1142 (8th Cir. 1998) (§1983 claims for injunctive relief based on prison conditions are rendered moot by inmate-plaintiff's release from prison);  <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claim for declaratory relief moot when he was transferred to another prison).

Therefore, defendants are entitled to summary judgment on Ruach's claims for

injunctive and declaratory relief in their official capacities.  Nonetheless, in light of Ruach's request for compensatory damages against the individual defendants in their individual capacities, the Court proceeds to analyze his claims.

       **E.**     **<u>Ruach's Claims Against Defendants in their Individual Capacities Fail</u>**

The doctrine of qualified immunity provides that "'Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  "The doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" <u>Bagby v. Brondhaver</u>, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting <u>Ludwig v. Anderson</u>, 54 F.3d 465, 470 (8th Cir. 1995)).  "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (quoting <u>Davis v. Scherer</u>, 468 U.S. 183, 195 (1984)).  "The obvious function of the qualified immunity rule is to excuse an officer who makes a reasonable mistake in the exercise of his official duties." <u>Edwards v. Baer</u>, 863 F.2d 606, 607 (8th Cir. 1988).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987)).  "The lynchpin of qualified

immunity is the public official's <u>objective</u> reasonableness." <u>Bagby</u>, 98 F.3d at 1098 (emphasis in original).

"[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." <u>Parrish v. Ball</u>, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted).

The Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) described a sequence for analysis for qualified immunity cases under which the court initially decides whether the facts as alleged show that the alleged conduct violated a constitutional right. Pursuant to <u>Saucier</u>, if the facts do not show a violation, the court does not proceed further with the qualified immunity analysis. <u>Id.</u> The Supreme Court later clarified that the "Saucier procedure should not be regarded as an inflexible requirement" although the Court "continue[d] to recognize that it is often beneficial." <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). The Court acknowledged that "in some cases, a discussion of why the relevant facts do not violate a clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all." <u>Id.</u>

In a qualified immunity case, the general summary judgment standard does not dictate that "the court should . . . deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim [because to do so] could undermine the goal of qualified immunity." <u>Brockinton v. City of Sherwood, Ark.</u>, 503 F.3d 667, 671 (8th Cir. 2007) (quoting <u>O'Neil v. City of Iowa City, Iowa</u>, 496 F.3d 915, 917 (8th Cir.

2007) (quoting <u>Saucier</u>, 533 U.S. at 202)).  Rather, the Court must "take a careful look at the record" and determine "which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so blatantly contradicted by the record ... that no reasonable jury could believe [them]." <u>O'Neil</u>, 496 F.3d at 917; <u>accord</u>, <u>e.g.</u>, <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) ("[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

In other words, a plaintiff alleging constitutional violation may not merely point to "unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy."  <u>Reed v. City of St. Charles, Mo.</u>, 561 F.3d 788, 790–91 (8th Cir. 2009).

Here, Ruach has alleged that the individual defendants violated his Eighth Amendment and Fourteenth Amendment rights.  For the reasons described below, the Court has concluded they did not violate Ruach's constitutional rights, and therefore, they are entitled to qualified immunity for their actions.

### 1.  Individual Defendants Did Not Violate Ruach's Eighth Amendment Rights

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  <u>See</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-46 (1981).  The prohibition

against "cruel and unusual punishments" is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993) (citation omitted).  To prevail on a cruel and unusual punishment claim under the Eighth Amendment, two requirements must be met. "First, the deprivation alleged must be, objectively, sufficiently serious," meaning that "the prison official's acts or omissions must result in the denial of 'the minimal civilized measure of life's necessities.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (marks and citations omitted).    Second, it must be shown that the prison official, acted with "deliberate indifference to inmate health or safety"—meaning that "a prison official must have a 'sufficiently culpable state of mind." <u>Id.</u> (marks and citations omitted).  "Accordingly, it is well-settled that a prisoner's confinement must not result in a serious deprivation of his basic human needs, or of a minimal, civilized measure of life's necessities.  As stated, the focus is on 'basic human needs--e.g., food, clothing, shelter, medical care and reasonable safety.'" <u>King v. Dingle</u>, 702 F. Supp.2d 1049, 1072 (D. Minn.  2010) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993)) (citations omitted).

a.     Physical Abuse and Failure to Intervene

Ruach contended that the physical abuse by Moore, Arnzen, and Warner and Arnzen's and Warner's failure to intervene to prevent the assault constituted an Eighth Amendment violation.   Amended Complaint, ¶¶64, 65.   To begin with, there is no evidence that Arnzen and Warner had anything whatsoever to do with Moore's alleged sexual contact with Ruach.  Warner was not working the day of the incident.  Warner Aff., ¶2.  Arnzen was present, but has stated in an affidavit that she did not see Moore touch Ruach in a sexual manner, nor did Ruach ever inform her that Moore had touched

32

him.  Arnzen Aff., ¶2.  This Court has reviewed the DVD of the interaction between Moore and Ruach (Carufel Aff., Ex. 2) and saw no evidence to support Ruach's claim that Arnzen and Warner failed to intervene to protect Ruach.

As to Moore's conduct, even assuming for the sake of argument that Moore touched Ruach inappropriately (which the Court did not observe in its review of the DVD) that conduct cannot rise to the level of an Eighth Amendment violation unless Ruach suffered some actual, identifiable harm.  "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation."  White v. Holmes, 21 F.3d 277, 281 (8th Cir.1994) (emphasis added).  Ruach did not plead, nor is there any evidence of actual harm that may have followed from Moore's alleged conduct.  Therefore, Ruach has no basis for an Eighth Amendment claim against Moore.

b.      Failure to Curb Patterns of Abuse

For the same reason, Ruach's claim against King, Hammer, Julson and Smith regarding their failure to take any action to "curb known patterns of physical abuse by Moore" in violation of the Eighth Amendment fail.  Ruach has presented no evidence that there is any "known pattern of physical abuse" by Moore or that King, Hammer, Julson or Smith knew of any such pattern.  All such claims should be dismissed.

c.      Retaliation and Failure to Protect from Retaliatory Discipline

Ruach claimed that the failure of Julson, Berts, and Carufel to place him in a cell with a camera and failure to protect him from retaliation violated the Eight Amendment.  Amended Complaint, ¶68, Relief Requested, A(4).  Although the Amended Complaint does not expressly allege that he was subjected to retaliatory discipline, Ruach's other

pleadings make it clear that he believed that this was so.  See Plaintiff's Disputed Factual Issues, pp. 6-7.

To sustain a retaliation claim, a prisoner must show that the primary purpose of the defendant's alleged retaliatory action was to punish the prisoner for attempting to exercise his constitutional rights.  As explained by the Eighth Circuit, "[t]o succeed on a claim of retaliatory transfer or retaliatory discipline, an inmate must prove that, but for an unconstitutional retaliatory motive, the transfer or discipline would not have occurred." Johnson v. Esry, 210 F.3d 379, 379 (8th Cir. 2000) (per curiam) (citation omitted) (table opinion) (emphasis added).  Thus, the prisoner must show that he would not have suffered the alleged retaliatory mistreatment at issue "but for" the defendant's retaliatory motive.  See Kind v. Frank, 329 F.3d 979, 981 (8th Cir. 2003) (prisoner's retaliation claim was properly dismissed where he "failed to show that but for his assertions of his constitutional rights, he would not have been transferred.").

Ruach presented no evidence that the NOVs and resulting discipline were the result of retaliation by defendants.  NOV #436033 issued after Moore wrote his incident report regarding Ruach's threatening and disruptive behavior on March 8, 2011.  King Aff., Ex. 2.  NOV #436405 issued after Carufel received a kite from Ruach alleging the inappropriate conduct by Moore, investigated the accusation and found it to be baseless.  Carufel Aff., Ex. 3.  NOV #437341 was issued based on an incident report by Moore that Ruach said "Your momma's a bitch, straight up."  Moore Aff., ¶5.  NOV #437570 was issued based on an incident report by Moore in which he reported that Ruach yelled at him "Don't throw kites in my cell!  You should man up.  You should see me in the streets, you don't even know" and Arnzen's report that she heard Ruach say

"bitch Ass C.O., I'm 'a kill yo motherfuckin' ass." Id., ¶6; Arnzen Aff., ¶3. Each of the NOVs resulted in disciplinary hearings and three of the four hearing findings were upheld on appeal. There is no evidence that this discipline was retaliatory. To the contrary, there is abundant evidence that the discipline was based on Ruach's own acts.

             d.      Loss of Privileges, Punitive Segregation and Extended Incarceration

Ruach was placed in punitive segregation for a lengthy period of time, lost privileges for 45 days and had extended incarceration of 190 days imposed upon him. However, these actions do not amount to such a serious deprivation so as to warrant relief under the Eighth Amendment. Protracted periods spent in segregation do not necessarily give rise to an Eighth Amendment claim. See Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (26 months in segregation and the deprivation of other privileges was not "sufficiently serious" to establish an Eighth Amendment violation); Wycoff v. Nichols, 94 F.3d 1187, 1188 (8th Cir. 1996) (10 days of disciplinary detention and 100 days restricted to a maximum security cell does not present "atypical, significant deprivation"); Blue v. Fabian, Civ. No. 10–87 (DSD/AJB) 2010 WL 5571969 *4 (D. Minn. December 8, 2010) (prisoner subject to being held in segregation for years at a time, without alleging specific circumstances and conditions that lead to cruel and unusual punishment is insufficient to support an Eighth Amendment claim).

To the extent that Ruach's Eighth Amendment claims are based on the time in segregation, loss of privileges and extended incarceration as a consequence of the discipline imposed on him, Ruach was required to present specific facts surrounding his segregation and the state of mind of those responsible for imposing this discipline on

him. He did neither. Furthermore, the exclusive remedy for a state prisoner challenging the fact or duration of his confinement is a petition for habeas corpus. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 488–90 (1973). This rule also applies to prison disciplinary sanctions affecting the fact or duration of confinement. <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 645 (1997).

In sum, the discipline imposed upon Ruach did not constitute cruel and unusual punishment under the Eighth Amendment and all claims relating to his discipline should be dismissed.

**2.    Defendants are Entitled to Summary Judgment on Ruach's Fourteenth Amendment Claims**

a.    Placement in Segregation, Extended Incarceration and Loss of Privileged do not Amount to a Denial of Due Process

To prevail on a Fourteenth Amendment due process claim, [a plaintiff] must first demonstrate that he was deprived of life, liberty or property by government action." <u>Orr v. Larkins</u>, 610 F.3d 1032, 1034 (8th Cir. 2010) (citing <u>Phillips v. Norris</u>, 320 F.3d 844 (8th Cir. 2003)); <u>see</u> <u>also</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2003) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property, and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' … or it may arise from an expectation or interest created by state laws or policies,") (citations omitted). "This analysis as to liberty parallels the accepted due process analysis as to property." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557-58 (1974). To show a deprivation of a protected liberty interest, the inmate "must identify conditions that impose 'atypical or significant

hardship . . . in relation to the ordinary incidents of prison life.'" <u>Orr</u>, 610 F.3d at 634

(quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).[14] "In order to determine whether

---

[14]    In <u>Norris</u>, the prisoner argued that his due process rights were violated by disciplinary confinement because he was not given the opportunity to be heard concerning the alleged infraction, and that this failure constituted an "atypical and significant hardship" in relationship to the "ordinary incidents of prison life," as recognized by <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).  The Eighth Circuit rejected this contention, stating:

> The Supreme Court laid out the test for determining liberty interests in a prison setting in <u>Sandin</u>, 515 U.S. at 483-84, 115 S.Ct. 2293.
>
>> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.
>
> <u>Id.</u> (citations omitted).
>
> In this context, there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. Rather, any liberty interest must be an interest in the nature of the prisoner's confinement, "not an interest in the procedures by which the state believes it can best determine how he should be confined." <u>Id.</u> Thus, Phillips is incorrect in asserting that the denial of a hearing should be considered when determining whether a liberty interest was affected. In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life. We do not consider the procedures used to confine the inmate in segregation. <u>Kennedy [v. Blankenship]</u>, 100 F.3d [640] at 643 [8th Cir. 1996].

an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life. . . ." Orr, 610 F.3d at 634 (quoting Phillips, 320 F.3d at 847) (internal quotations omitted). Once a deprivation of a protected interest is established, "the next question is what process is due." See Williams v. Norris, 277 Fed. Appx. 647, 648-49 (8th Cir. 2008) (citing Wilkinson, 545 U.S. at 224).

It is true that Ruach was found guilty of multiple separate violations that resulted in approximately 600 days of segregation. See King Aff., Ex. 2 (King's Appeal Decision for NOVs #436033, #436405); Thielen Aff., Ex. 1 (hearing findings on NOV 437570); Hammer Aff., Ex. 1 (Hammer's Appeal Decision for NOV #437341). However, Ruach neither claimed nor offered any evidence to suggest that the conditions of his segregation were atypical or unduly harsh. Although his claim for injunctive relief seemed to imply that he was experiencing mental health issues as a result of his segregation, no evidence was presented to that effect. In fact, defendants submitted records showing that Ruach was receiving regular mental health treatment. Affidavit of Kobie Hudson, Ex. 1 (Ruach's mental health records). There is no indication in these records that Ruach was suffering any ill effects as a result of segregation. Id.

Based on the record before this Court, the Court concludes that discipline in the form of segregation did not constitute atypical and significant hardships sufficient to find a protected liberty interest. See Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (twenty-six months of segregated confinement was not "atypical and significant

Id. at 847 (internal marks and citations omitted); see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (finding that a correctional facility's grievance procedure "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.").

hardship"); Hemphill v. Delo, 124 F.3d 208 (8th Cir. 1997) (holding that more than 300 days in segregated confinement, by itself, was not sufficient to find a protected liberty interest); but see Williams v. Norris, 277 Fed. Appx. 647, 648-649 (8th Cir. 2008) (twelve years in segregation was an atypical and significant hardship due to the particular restrictions imposed in relation to the segregation); Herron v. Schriro, 11 Fed. Appx. 659, 661-662 (8th Cir. 2001) (a prisoner's "lengthy confinement, for more than thirteen years, in administrative segregation, resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life").  Similarly, the loss of privileges is not an atypical and significant hardship in relation to the ordinary incidents of prison life.  See Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) (concluding that the "loss of a higher-paying job and other privileges," did not constitute an atypical hardship that would support a due process claim).

In summary, the undisputed facts do not show that the discipline Ruach received (in the form of segregation, extended incarceration and loss of privileges) with respect to the various NOVs for which he was found guilty, amounted to an atypical and significant hardship.  Therefore, plaintiff's claims do not implicate a liberty interest protected by due process.  As such, defendants' motion for summary judgment should be granted as it relates to plaintiff's claims of deprivation of due process should be granted.

b.     There was No Denial of Due Process

To the extent that Ruach alleged he was denied procedural due process in connection with the hearings on the NOVs that lead to the imposition of extended incarceration, segregation or loss of privileges, the Court only examines the nature and

scope of the disciplinary process <u>after</u> the inmate has established that he has been deprived of life, liberty or property.  Here, because Ruach failed to make out a protected liberty interest the Court need not address his procedural due process claim.

However, even if this Court had not determined that Ruach's due process claims failed because he could not demonstrate that he was deprived of liberty as a consequence of the various the NOVs filed against him, the record does not support a claim that he was not afforded procedural due process through the various disciplinary hearings that lead the impositions of these penalties.

To satisfy the procedural due process requirements for prison discipline, plaintiff must show that he was entitled:

> (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action.

<u>Hrbek v. Nix</u>, 12 F.3d 777, 780-81 (8th Cir. 1993) (citing <u>Wolff</u>, 418 U.S. at 563–67); <u>see also</u> <u>Allen v. Reese</u>, 52 Fed. Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied where he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (ii) a written report of the DHO's decision), <u>cert.</u> <u>denied</u>, 540 U.S. 849 (2003)).

On the other hand, "[i]n the prison context, where swift and sure punishment is often imperative, the Constitution does not require trial-like evidentiary standards." <u>Hrbek</u>, 12 F.3d 777.  In <u>Wolff</u>, the Supreme Court recognized that the prison

environment necessitated granting prison officials discretion in setting evidentiary standards in disciplinary hearings:

> Ordinarily the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution…prison official must have the discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

418 U.S. at 566. Consequently, neither confrontation nor cross-examination of witnesses are required to pass Constitutional muster. Id. at 567.

Due process also requires that there must be "some evidence" supporting the disciplinary determination. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985); see also Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record").

The "some evidence standard" is satisfied if:

> there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56 (emphasis added); Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir. 1993) (due process is satisfied if disciplinary committee's decision was based on "some evidence" in record), cert. denied, 510 U.S. 997 (1993).

Ruach's disciplinary records indicate that he received advance notice of the charges against him, was given an opportunity to present evidence, and each of the hearing officers' decisions were based on "some evidence."  See King Aff., Exs. 2, 3; Hammer Aff., Ex. 1; Thielen Aff., Ex. 1.  In addition, it is also reasonable to assume that prison officials, like other officials, are impartial decisionmakers, and an inmate's subjective beliefs, without more, that the officials acted improperly, are insufficient to survive summary judgment.  Cf. de Llano v. Berglund, 282 F.3d 1031, 1035-36 (8th Cir. 2002) ("'We begin with a presumption that decision-makers are honest and impartial. [The plaintiff] offers no evidence of vindictive behavior beyond his mere statement of belief that the Board members acted in this manner…[The plaintiff's] beliefs have no effect and do not create a genuine issue of material fact that would preclude summary judgment.'") (quoting Marler v. Mo. State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir.1996) (bracketing in de Llano).  Here, Ruach presented no evidence to suggest that any of the decisionmakers were partial or biased.

Furthermore, even accepting as true Ruach's allegation that the hearing officers refused to call witnesses in connection with the disciplinary hearing on NOV #436033 (which the hearing officers deny—Behrends Aff., ¶3, Lindell Aff., ¶4), that decision was within the MNDOC officials' authority.  See Wolff, 418 U.S. at 566 (finding that prison officials do not need to explain why they had refused to allow an inmate to call witnesses or present evidence and only requiring the calling of an inmate's witnesses if

doing so is not "unduly hazardous to institutional safety or correctional goals."); see also Ponte v. Real, 471 U.S. 491, 496 (1985) (holding that due process does not require that the reasons for refusing to call witnesses requested by an inmate at a disciplinary hearing be placed in writing.); Hrbek, 12 F.3d at 781 ("[D]isciplinary actions may be taken-and often they are-based only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find the guard's report to be credible and therefore take disciplinary action.") (citing Hill, 472 U.S. at 456) (constitutionally sufficient evidence consisted of guard's report and oral testimony)); Whentworth v. Fisher, Civ. No. 10-2270 (JNE/JSM), 2011 WL 5077612 at *9 (D. Minn. Oct. 7, 2011) ("In Wolff the Supreme Court recognized that the prison environment necessitated granting prison officials discretion in setting evidentiary standards in disciplinary hearings . . . prison officials must have the discretion to keep the hearing within reasonable limits and refuse to call witnesses that may create a risk of reprisal or undermine authority.'") (quoting Wolff, 481 U.S. at 566), Order Adopting Report and Recommendation, 2011 WL 5078870 (D. Minn. Oct. 26, 2011).

On this record, this Court does not find that Ruach was denied procedural due process and his Fourteenth Amendment claims should be dismissed.

**F.  The Court Should Decline to Exercise Supplemental Jurisdiction Over Ruach's State Law Tort Claim and that Claim Should be Dismissed Without Prejudice**

Having recommended the dismissal of Ruach's §1983 claims, his only remaining claim is a tort claim against Moore arising under state law. Therefore, the Court must consider whether to exercise supplement jurisdiction over this claim. See 28 U.S.C. §1367(c)(3) ("In any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so related [to the federal claims]. . . that they form part of the same case or controversy"); Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); see also Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) ("The Supreme Court has noted that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine. . .will point toward declining to exercise jurisdiction over the remaining state-law claims.") (internal quotation and citation omitted).

The Court recommends that any state tort claims against Moore be dismissed without prejudice so Ruach can pursue them in state court, should he so choose.

## IV.    RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED that:

(1)    Plaintiff's Motion for the Defense of Qualified Immunity [Docket No. 44] be DENIED;

(2)    Plaintiff's Motion for Partial Summary Judgment [Docket No. 52] be DENIED; and

(3)    Defendants' Cross Motion for Summary Judgment [Docket No. 78] be GRANTED except that Plaintiff's state law tort claim and that claim should be dismissed without prejudice.

Dated: August 5, 2013                    *Janie S. Mayeron*
                                        JANIE S. MAYERON
                                        United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 20, 2013** a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.